UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 2:19-CR-90 |
| v. | ) | |
| | ) | |
| JACLYN AMANDA INGE, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S POSITION ON SENTENCING

The United States of America now submits its position on sentencing. In the Presentence Investigation Report (PSR), the U.S. Probation Office determined that the advisory guidelines sentencing range is a term of 108–120 months' imprisonment on Count Three of the Indictment, possession of a firearm by an unlawful user of controlled substances, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). For the reasons below, the Court should assess a three-point reduction for acceptance of responsibility, reducing the total offense level to 28 and the guidelines range to 78– 97 months, and sentence her to 78 months in prison, the bottom of that range. The government's recommended sentence would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

The defendant's guidelines range stems from a base offense level of 20 under the robbery guidelines provision, U.S.S.G. § 2B3.1(a), because she "possessed or transferred a firearm or ammunition cited in the offense of conviction with knowledge or intent that it would be used or possessed in connection with another offense"—Hobbs Act robbery. PSR ¶ 21; U.S.S.G. § 2K2.1(c)(1)(A). And the defendant and her coconspirators "completed all the acts the defendant believed necessary for successful completion of the substantive offense." U.S.S.G. § 2X1.1(b)(1). She received a six-point enhancement because "a firearm was otherwise used" in the robbery—

her coconspirators used firearms to stab their victims in the back, which is more than "brandish[ing]" but less than "discharg[ing]." PSR ¶ 22; U.S.S.G. § 2B3.1(b)(2)(B). She received a four-point enhancement because the victims were "abducted to facilitate commission of the offense [and] to facilitate escape." PSR ¶ 23; U.S.S.G. § 2B3.1(b)(4)(A). And she received a one-point enhancement because her coconspirators took one of the victims' firearms during the robbery. PSR ¶ 24; U.S.S.G. § 2B3.1(b)(6). The defendant's criminal history category is I—she has one misdemeanor conviction. PSR ¶¶ 35–36.

## I. THE DEFENDANT WARRANTS AN ACCEPTANCE CREDIT

"[T]he defendant admitted her involvement in the instant offense," "agreed with the information contained in the Statement of Facts," and showed that "she was very remorseful for her involvement" in the robbery. PSR ¶ 17. But the PSR declined to apply a two-point reduction for acceptance of responsibility under § 3E1.1(a) because it concluded that the defendant "has not voluntarily terminated criminal conduct." *Id.* Specifically, the PSR notes that, while on presentence release, the defendant "submitted a urine specimen that was positive for marijuana and signed an admission form admitting to drug use on January 19, 2020." *Id.* She also "submitted a positive urine specimen for marijuana on February 3, 2020." PSR ¶ 79. The probation officer filed a violation report with the Court soon after. *Id.*

Under normal circumstances, violating conditions of presentence release by using controlled substances multiple times warrants a loss of acceptance credit. When confronted with those violations, however, the defendant took the extraordinary step of moving to revoke her own bond to eliminate the temptation to continue using drugs, to remove herself from a living situation that was not conducive to her complying with conditions of release, and to further emphasize her regret for committing the instant offense and the violations. The Magistrate Judge granted the

motion on February 28, 2020, ECF No. 30, and the defendant, with almost no criminal history to speak of, has been in custody ever since. As far as the government can tell, no other defendant has taken such lengths to show acceptance of responsibility. This defendant should be rewarded for "clearly demonstrate[ing] acceptance of responsibility for h[er] offense" with the two-point acceptance credit under § 3E1.1(a).

## II.    MOTION FOR ACCEPTANCE OF RESPONSIBILITY

If the Court grants the defendant the initial acceptance credit, under U.S.S.G. § 3E1.1(b) and based on the terms of the plea agreement, the government moves the Court to grant an additional one-level reduction in the defendant's offense level for acceptance of responsibility. The defendant timely notified the government of his intention to enter a plea of guilty, thereby allowing the government to avoid preparing for trial and permitting the Court and the government to allocate resources efficiently.

## III.    BACKGROUND

In June 2019, a federal grand jury sitting in Norfolk returned an indictment charging the defendant with making a materially false statement during the purchase of a firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2) (Count One); causing a federally licensed firearms dealer to maintain false records, in violation of 18 U.S.C. § 924(a)(1)(A) (Count Two); and drug-user in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2) (Count Three). In November 2019, the defendant pleaded guilty to Count Three under a plea agreement. The Court ultimately scheduled the sentencing hearing for July 27, 2020.

## IV.    ARGUMENT

In *United States v. Booker*, the Supreme Court made clear that sentencing courts should "consult [the Sentencing] Guidelines and take them into account when sentencing." 543 U.S. 220,

264 (2005). The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities." *Id.* (quoting 28 U.S.C. § 991(b)(1)(B)). In its recent decision in *Molina-Martinez v. United States*, the Court emphasized the role the guidelines play in achieving "[u]niformity and proportionality in sentencing" and noted that "the Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar." 136 S. Ct. 1338, 1347 (2017).

The Fourth Circuit has provided the following guidance in the wake of *Booker*: "A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and" the 18 U.S.C. § 3553(a) factors "before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). So sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A), (B).

### A. Nature of and Circumstances of the Offense

The nature and circumstances of the offense are very serious and warrant a sentence of 78 months in prison. As the defendant admits in the statement of facts, in August and September 2017, she purchased two handguns at two different gun shows after lying on the Form 4473 by indicating that she was not an unlawful user of controlled substances when, in fact, she was addicted to marijuana "and had used the drug daily for several years." SOF ¶¶ 1–2.

But that criminal conduct is just the tip of iceberg. During that time, the defendant was employed by Mac's Reloads, a federally licensed ammunition-reloading business, and she

moonlighted as the manager of "a rap duo titled Eye Tunes Nation." PSR ¶ 7. She conspired with that duo—Desmond Littlejohn and an unindicted conspirator—to rob Mac's Reloads, and she facilitated the robbery by feeding inside information to the others, including that in the early morning hours of October 9, 2017, the store owner would be returning to the business from a gun show in Philadelphia carrying several thousand dollars in cash in a black bag. *Id.*

While the owner and another employee were unloading their truck, Littlejohn and the other coconspirator ambushed them, pointed guns at them, and demanded that the owner hand over the black bag that the defendant had told them about, or they would shoot the employee. PSR ¶ 8. The owner told them that the bag was inside the residence (the owner ran the business out of his home in Virginia Beach), so the coconspirator ran in, grabbed the bag, and came back out while Littlejohn held the victims at gunpoint. *Id.* With the bag in hand, Littlejohn and the coconspirator stabbed their guns in the victim's backs, moved them to the backyard, separated them, and ordered them to lie face down in the ground. The owner feared for his life and thought he and the employee were going to be shot and killed. The employee begged for her life and told the robbers that she and the owner had children. The conspirator then told the victim that he knew the victims had children "and knew their names, where they lived, and everything about [the victims'] children." *Id.*

"[T]he defendant provided Littlejohn and [the coconspirator] with the information regarding [the victims], the information related to the gun show, the information regarding money obtained from the gun show and the firearms they utilized in the robbery," including the Jiminez Arms handgun charged in the indictment that the defendant had purchased at a gun show roughly two months beforehand. PSR ¶ 12.

Littlejohn and the coconspirator "fled the scene with the black bag and money bags," which totaled more than $10,0000, but they dumped the bag's remaining contents, including a firearm and empty money bags, as well as the bag itself, onto the street during flight. PSR ¶ 11. Investigators sent the ski mask to the lab, which extracted DNA matching Littlejohn's. *Id.*

Littlejohn was then indicted for conspiracy to commit Hobbs Act robbery, substantive Hobbs Act robbery, and brandishing a firearm in furtherance of a crime of violence. PSR ¶ 4. He went to trial, was convicted on all three counts, and was sentenced to 189 months in prison. *Id.* A major theme of the government's case in chief was that the robbery was an inside job facilitated by the defendant.

The defendant almost crossed the witness-tampering line during the proceedings against her. "[S]ubsequent to the defendant's indictment for the instant offense, she attempted to contact individuals for the purpose of soliciting information that would 'diminish' the character of a possible witness to her marijuana use." PSR ¶ 13. She also "stated that the witness's 'snitching was going to catch up' to him/her." *Id.*

The defendant was an instrumental part of a violent robbery that traumatized employees of the business she worked for. She betrayed them to armed criminals. Her egregious conduct supports a sentence of 78 months in prison.

B.  History and Characteristics of the Defendant

The defendant's history and characteristics are mostly mitigating and support a sentence below the PSR's calculated guidelines range and at the bottom of the government's proposed guidelines range. The defendant, 40, was "well provided for as a child" and graduated high school. PSR ¶¶ 48, 63. Although she suffered emotional abuse from her father, they have reconciled, and both him and the defendant's mother now play an active role in her life. The defendant has two

children, 19 and 17. The older daughter attends Virginia Tech, while the younger son lives with his father in Virginia Beach.

The defendant's personal history is not all positive, however. She struggles with substance abuse, particularly marijuana. PSR ¶ 61. And prior to her detention, she struggled to separate herself from the robbery conspiracy, as she was romantically involved with that second coconspirator. She "maintained contact with [the coconspirator]" and even let him move in with after he was "released from incarceration to a term of supervised probation" and while she was on presentence release here. PSR ¶ 84. In prior jail calls, the defendant even warned the coconspirator about the government's investigation: "If I were you, I'd get out and flee." PSR ¶ 83.

The defendant has one conviction, for disorderly conduct, that she sustained last year. PSR ¶ 35. She also incurred five charges, for grand larceny, concealment, petit larceny, and driving on a suspended license, that were later nolle prossed or dismissed. PSR ¶¶ 40–44.

### C. Other Factors To Be Considered Under Section 3553(a)

The seriousness of the offense, providing just punishment, public safety, and general and specific deterrence all support a sentence within the government's recommended guidelines range.

## V. CONCLUSION

Based on all of the factors set forth in 18 U.S.C. § 3553(a), a 78-month sentence is sufficient but not greater than necessary.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By: _____/s/_____
William B. Jackson
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Telephone: (757) 441-6331
Facsimile: (757) 441-3205
E-mail: william.jackson3@usdoj.gov

# CERTIFICATE OF SERVICE

       I hereby certify that on the 20th day of July, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record including:

                Eric Leckie, Esq.
                2408 Princess Anne Road
                Virginia Beach, VA 23456
                Telephone: (757) 337-2727

       I hereby certify that on the 20th day of July, 2020, I sent by electronic mail a true and correct copy of the foregoing to the following:

                Kristie M. Milby
                Supervising U.S. Probation Officer
                600 Granby Street, Suite 200
                Norfolk, VA 23510

                /s/
                William B. Jackson
                Assistant United States Attorney
                Attorney for the United States
                United States Attorney's Office
                101 West Main Street, Suite 8000
                Norfolk, Virginia 23510
                Telephone: (757) 441-6331
                Facsimile: (757) 441-3205
                E-mail: william.jackson3@usdoj.gov